**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ROBERT COLE and ALYSSA CRAWFORD, Individually, and on Behalf of All Others Similarly Situated,** ) ) ) | |
| ) | **Case No. 21-cv-2276** |
| **Plaintiffs,** ) | |
| ) | **Hon. Matthew F. Kennelly** |
| **v.** ) | |
| ) | |
| **ACD EMERGENCY ROAD SERVICES LLC, OLAMIDE TOWING SERVICES LLC, CAMARA BOWDEN, and DANTEA GRAYSON,** ) ) ) ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** | |

<u>**SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**</u>

Plaintiffs Robert Cole and Alyssa Crawford ("Plaintiffs"), individually and on behalf of all other similarly situated employees, by and through their attorney, Law Offices of Daniel Zemans, LLC, bring this collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA), and class action pursuant to the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq.*, and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq.* ("Chicago Wage Ordinance") to recover unpaid wages, liquidated damages, statutory penalties, attorney's fees and costs, and allege, upon personal belief as to themselves and their own acts, and as for all other matters upon information and belief, and based upon the investigation made by their counsel, as follows:

<u>**INTRODUCTION**</u>

1.      This three-count joint action involves various claims related to unpaid wages owed to the Plaintiffs by their former employer, ACD, due to the Defendants misclassifying Plaintiffs and those they represent as independent contractors exempt from overtime pay.

2.     Named Plaintiffs and the persons they represent were and are employees of Defendants working as light truck service drivers and bookkeepers at ACD from April 27, 2018 through the present ("the relevant time period").

## THE PARTIES

3.     Plaintiff Cole is a citizen of Illinois who, at all relevant times, resided and worked in this District.

4.     Plaintiff Crawford is a citizen of Illinois who, at all relevant times, resided and worked in this District.

5.     Named Plaintiffs, like those they seek to represent, were employees of Defendants as defined in 29 U.S. § 203(e); 820 ILCS 105/3(d); and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

6.     Named Plaintiffs and those they seek to represent all shared similar job titles, compensation plans, job descriptions and job requirements.

7.     Defendant ACD is incorporated in Illinois; is headquartered in this District; is an "enterprise" as defined in 29 U.S.C. § 203(r)(1); is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A); and is an employer as defined in 29 U.S. § 203(d), 820 ILCS 105/3(c), and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

8.     Defendant Olamide Towing Services LLC is incorporated in Illinois; is headquartered in this District; is an "enterprise" as defined in 29 U.S.C. § 203(r)(1); is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A); and is an employer as defined in 29 U.S. § 203(d), 820 ILCS

105/3(c), and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

9.     Defendant Bowden is a citizen of Illinois who, at all relevant times, resided and worked in this District and is an employer as defined in 29 U.S. § 203(d), 820 ILCS 105/3(c), and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

10.     Defendant Grayson is a citizen of Illinois who, at all relevant times, resided and worked in this District and is an employer as defined in 29 U.S. § 203(d), 820 ILCS 105/3(c), and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

## JURISDICTION AND VENUE

11.     Jurisdiction is invoked under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state and municipal law claims pursuant to 28 U.S.C. § 1367.

12.     This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

13.     Mr. Cole worked for ACD from on or around June 21, 2019 through on or around January 12, 2021.

14.     Ms. Crawford worked for ACD from in or around late September 2020 to December 2020.

15.     Named Plaintiffs and all the people they represent worked more than 40 hours per week.

16.     ACD had a uniform company policy, applicable to Named Plaintiffs and all the people they represent, of willfully misclassifying employees as independent contractors.

17.     ACD had a company policy, applicable to Named Plaintiffs and all the people they represent, of refusing to pay an overtime premium for hours worked in excess of 40 in a given workweek.

18.     The Defendants failure to pay all money owed to Plaintiffs was willful.

19.     In fact, during a significant part of the relevant time period, Defendants knew they were under investigation by the U.S. Department of Labor for some of the identical misclassifications and pay policies at issue here, an investigation that ultimately led to a consent judgment in *Walsh v. ACD Emergency Road Services, et al*, No. 21-cf-02118 (N.D. IL June 21, 2021).

20.     ACD provides various services to car owners in need of help, including towing, winching and minor roadside assistance issues.

21.     Cole worked on minor roadside assistance issues as a Light Truck Service Driver, a job that required him to drive to respond to calls for roadside assistance for minor car issues that clients were having such as dead batteries, tire changes, and gas delivery.

22.     Cole and the other light truck service drivers were paid an hourly wage as well as on a piecework basis under which they were paid additional sums for each call they went out on and for various services provided and sales made, such as changing a tire or selling a battery.

23.     Additionally, prior to on or around October 7, 2020, those Plaintiffs were also paid extra for calls where the customer left before Plaintiffs arrived. These were called Gone on Arrival or GOAs.

24.     Crawford worked as a dispatcher who received service requests through an online portal and then coordinated with drivers and customers to ensure service was provided.

25.     All of the work was done in the State of Illinois.

26.     Plaintiffs and those they represent worked more than 40 hours per week within the City of Chicago.

27.     Dispatchers were paid a straight hourly wage.

28.     Plaintiffs were not managers and had no supervisory duties at all.

29.     As a company that buys and resells products manufactured all over the country and the world, ACD is engaged in interstate commerce.

30.     Neither Plaintiff had their own roadside service business.

31.     Light truck service drivers only went out on calls to customers when assigned by ACD from their office in Chicago, Illinois.

32.     For all of their work, light service drivers drove Toyota Tacomas provided by ACD.

33.     Toyota Tacomas weigh under 10,000 pounds.

34.     Dispatchers worked in ACD's office, which is located in Chicago, Illinois.

35.     ACD, Bowden and Grayson set Plaintiffs' work schedules.

36.     Neither Plaintiff had any managerial responsibilities whatsoever.

37.     Plaintiffs made no large expenditures on their work in that they risked no capital and made no capital investments related to their work.

38.     Plaintiffs did not use any special skills that required any type of advanced education.

39.     Plaintiffs worked for ACD on a full-time basis; they did not do any other roadside assistance work or dispatching for any other entities while working for ACD.

40.    The work done by Plaintiffs' was integral to ACD's business. ACD offers customers 3 services: towing, winching and roadside assistance. The company could not offer roadside assistance without employees like the Plaintiffs.

41.    Light truck service drivers were required to sign Light Truck Service Driver Agreements, which were employment contracts filled with rules showing just how much control ACD had over Plaintiffs.

42.    The Agreements made clear that drivers could not work for any competing companies, stating "When working for ACD Emergency Road Services the contractor can't render services for any other SDC it's a conflict of interest."

43.    The Agreements included a "Driver Daily Agenda" which listed more than a dozen specific tasks Plaintiffs were required to complete each day in addition to their work with customers.

44.    ACD also controlled what drivers wore, requiring them to wear ACD uniforms that Plaintiffs were required to pay for.

45.    Additionally, ACD enforced, via the Driver Agreements, more than 50 additional rules ranging from micromanaging how loud music could be played in the drivers' trucks to requiring drivers' to test customers' batteries even if the service request had nothing to do with a battery issue to getting approval for all bathroom and food breaks.

46.    In addition to setting Plaintiffs' schedules, ACD required Plaintiffs to give at least 7 days' notice before taking time off and requiring managerial approval for any absences longer than 3 days.

47.    Plaintiffs were paid an hourly rate that was the same for the first 40 hours in a week and for the hours worked beyond 40 in a given week.

6

Case: 1:21-cv-02276 Document #: 38 Filed: 01/26/22 Page 7 of 15 PageID #:184


48.     Both individual Defendants controlled the amount of money that Plaintiffs were paid.

49.     The only reason Defendants classified Plaintiffs as exempt and refused to pay them overtime wages was as a concerted effort to reduce labor and payroll costs.

50.     At all times Plaintiffs worked for ACD, Defendants managed Plaintiffs' work and the number of hours they worked.

51.     At all times Plaintiffs worked for ACD, Defendants dictated, controlled and ratified all policies and practices relating to Plaintiffs' employment.

52.     At all times Plaintiffs worked for ACD, Plaintiffs had no authority to hire or fire other ACD employees.

53.     At all times Plaintiffs worked for ACD, Plaintiffs did not supervise or direct the work of other ACD employees.

54.     At all times Plaintiffs worked for ACD, Plaintiffs were expected to follow established company protocols in carrying out their duties.

55.     At all times Plaintiffs worked for ACD, Plaintiffs were not permitted to incur expenses on ACD's behalf without a supervisor's approval.

56.     At all times Plaintiffs worked for ACD, Plaintiffs were not permitted to set or establish new policies or practices.

57.     At all times Plaintiffs worked for ACD, Plaintiffs' job duties did not involve the performance of work requiring invention, imagination, originality or talent in a recognized filed of artistic or creative endeavor.

58.     Defendants were aware that Plaintiffs worked over 40 hours per workweek because, among other ways, Defendants tracked all of Plaintiffs' hours in a computer system.

59.     ACD did not pay Plaintiffs any overtime premium wages for work they performed in excess of forty (40) hours per week.

60.     As a result of Defendants' improper and willful misclassification of Plaintiffs, they suffered lost wages and other damages.

61.     After Plaintiffs commenced the initial lawsuit in this case, Defendants Bowden and Grayson ceased operations at ACD and established a new company, Olamide Towing Services LLC that would provide the same services as ACD using the same trucks and some of the same employees.

62.     Bowden and Grayson set up Olamide in a transparent effort to avoid having to pay damages should ACD be found liable.

63.     This case began on April 27, 2021 and Defendants opened Olamide less than two months later, on July 21, 2021.

64.     Olamide and ACD are, for all intents and purposes, the same company.

**CLASS ACTION ALLEGATIONS**

65.     Plaintiffs bring the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, the IMWL and the Chicago Wage Ordinance on behalf of themselves and the members of the Class comprising:

> "All current and former light truck service drivers and dispatcher employed by the Defendants in Chicago, Illinois within the last three years who were classified as exempt from overtime."

66.     The Second and Third Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members.

67. Such questions include, but are not limited to:

a.      whether Defendants employed Plaintiffs and the members of the Class within the meaning of the IMWL and the Chicago Wage Ordinance;

b.      whether Defendants properly classified Plaintiffs as employees;

c.      whether Defendants failed to pay Plaintiffs and the Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning of the IMWL and the Chicago Wage Ordinance;

d.      the nature and extent of Class-wide injury and the appropriate measure of damages for the Class; and

e.      whether the misclassifications were willful.

68.     This action is properly maintainable as a class action under Rules 23(a) and (b) because:

a.   The class is so numerous that joinder of all members is impracticable;

b.   There are questions of law or fact that are common to the class;

c.   The claims of the Named Plaintiffs are typical of the claims of the class; and,

d.   The Named Plaintiffs will fairly and adequately protect the interests of the class.

69.     The claims of Plaintiffs are typical of the claims of the members of the Class they seek to represent. Plaintiffs and the members of the Class work or have worked for Defendants and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of forty (40) in a workweek.

70.     The Named Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

71.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in

light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

72. On information and belief, the total number of putative class members represents over forty individuals. The exact number of class members can be determined from Defendants' payroll records.

73. Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

74. The damages suffered by the class members arise from the same nucleus of operative facts. Moreover, damages can be calculated by using simple mathematical formulas.

75. The Named Plaintiffs will fairly and adequately protect the interests of the class. They have retained experienced counsel that is competent in employment law and in the prosecution of complex litigation.

76. A class action is superior to other available means for the fair and efficient adjudication of this controversy because class treatment will allow a large number of similarly-situated persons, for whom individual joinder is impracticable, to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense of individual claims. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for Named Plaintiffs and the class members to bring individual claims even if they were aware of their legal claims.

77.     Additionally, separate individual actions would create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impede the ability of class members to protect their interests.

### COUNT I – Violation of the Fair Labor Standards Act: Collective Action for Unpaid Minimum Wages

78.     Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

79.     As a result of Defendants' failure to pay overtime premiums for hours worked over 40 in a given workweek, Defendants paid wages to Plaintiffs based on an incorrectly low regular rate of pay.

80.     At all material times, Defendants' failure to pay wages at the correct rate of pay was willful.

81.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

### COUNT II – Violation of the Illinois Minimum Wage Law: Class Action for Unpaid Minimum Wages

82.     Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

83.     Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rules 23(a) and (b).

84.     Defendants violated the IMWL, 820 ILCS § 105, *et seq.,* by regularly and repeatedly failing to properly pay regular compensation to Plaintiffs.

85.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

**Count III – Violation of the Chicago Minimum Wage and Paid Sick Leave Ordinance:
Class Action for Unpaid Minimum Wages**

86.     Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

87.     Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rules 23(a) and (b).

88.     Defendants violated the Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq,* by regularly and repeatedly failing to properly pay regular compensation to Plaintiffs.

89.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiffs, Robert Cole and Alyssa Crawford, individually and on behalf of all others similarly situated, by and through their attorney, Law Offices of Daniel Zemans, LLC, demand judgment against the Defendants, jointly and severally, and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs and the members of the class and collective action for the nature, extent and duration of their damages, the costs of this action and as follows:

A.     Certify a class under Counts II and III;

B.     Appoint Law Offices of Daniel Zemans, LLC as class counsel under Counts II and III;

C.     Order Defendants to file with this Court and furnish to Plaintiffs' counsel a list of all names, mailing addresses telephone numbers, and email addresses of all light truck service drivers and dispatchers employed by Defendants who currently work or have worked for

Defendants at any point from August 20, 2018 through the present, regardless of how many days they worked;

D.    Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all light truck service drivers and dispatchers employed by the Defendants during the applicable statutory period, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to Count I in this lawsuit;

E.    Declare and find that the Defendants committed one or more of the following acts:

        i.    Violated the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*;

        ii.    Willfully the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*;

        iii.    Violated the Illinois Minimum Wage Law, 820 ILCS §105, *et seq.*;

        iv.    Willfully violated the Illinois Minimum Wage Law, 820 ILCS §105, *et seq.*;

        v.    Violated the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, IL, Municipal Code § 1-24-010, *et seq*; and

        vi.    Willfully violated the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, IL, Municipal Code § 1-24-010, *et seq.*

D.    Award compensatory damages, including all regular pay owed, in an amount according to proof;

E.    Award compensatory damages in an amount according to proof;

F.    Award interest on all compensation due accruing from the date such amounts were due as required by the FLSA;

G.      Award liquidated damages on all compensation due accruing from the date such amounts were due as required by the FLSA;

H.      Award 5% per month interest on all compensation due accruing from the date such amounts were due until it is paid as required by the IMWL;

I.      Award treble damages on all compensation due accruing from the date such amounts were due as required by the Chicago Minimum Wage and Paid Sick Leave Ordinance;

J.      Award all costs and reasonable attorney's fees incurred prosecuting this claim;

K.      Grant leave to amend to add claims under applicable state and federal laws;

L.      Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

M.      For such further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Dated:** January 19, 2022          **Robert Cole and Alyssa Crawford**

/s/ Daniel Zemans
_____
By:  Attorney for Plaintiffs

Daniel Zemans
Law Offices of Daniel Zemans, LLC
2023 W. Berteau Avenue
Chicago, IL 60618
Phone: (773) 706-7767
Email: dzemans@zemans-law.com

15